S11A0851. HIGUERA-HERNANDEZ v. THE STATE.

(714 SE2d 236)

CARLEY, Presiding Justice.

Appellant Delman Higuera-Hernandez and his co-defendant Rogelio Higuera-Gutierrez were jointly tried for two murders and other offenses. A jury found Appellant guilty of the malice murder of Antonio Clark, the felony murder of Santos Palacios-Vasquez during the commission of a conspiracy to commit trafficking in cocaine, the underlying conspiracy offense itself, trafficking in a quantity of cocaine separate and distinct from that involved in the conspiracy count, and two counts of possession of a firearm during the commission of a felony. The trial court entered judgments of conviction on these guilty verdicts and imposed concurrent sentences of life imprisonment for the two murders and consecutive terms of five years for conspiracy, ten years for trafficking, and five years for each weapons offense. Appellant directly appeals from those convictions.[*]

1. Construed most strongly in support of the verdicts, the evidence shows that Appellant and his co-defendant met others at an apartment for the purpose of selling two kilograms of cocaine. After

---

[*] The crimes occurred on September 28, 2009, and the grand jury returned an indictment on January 26, 2010. The jury found Appellant guilty on March 16, 2010, and the trial court entered the judgments of conviction and sentences on April 20, 2010. Appellant filed the notice of appeal on May 7, 2010. The case was docketed in this Court for the April 2011 term and was orally argued on May 16, 2011.

receiving a large amount of cash, Appellant shot and killed Clark. Palacios-Vasquez was fatally shot, and Appellant himself was shot in the abdomen. He fled with the help of others and sought treatment at a hospital, claiming that he was injured in an attempted robbery. Although Appellant denied knowledge of the apartment, his blood was found at the crime scene, and a set of keys to the apartment was discovered at his house. Investigators also found over 28 grams of cocaine with a purity of at least 10% at the apartment in a different container from the purported two kilograms of cocaine offered for sale. The evidence was sufficient to authorize a rational trier of fact to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Hendricks v. State*, 277 Ga. 61-62 (1) (586 SE2d 317) (2003).

However, where, as here, the defendant is found guilty of both felony murder and the underlying felony, that "underlying felony merges into the felony murder conviction. [Cit.] Here, the [conspiracy] conviction was the underlying felony that formed the basis for the felony murder conviction . . . ." *Carter v. State*, 285 Ga. 394, 399 (8) (677 SE2d 71) (2009).

> Because the underlying [conspiracy] merged into the felony murder conviction, the trial court erred in entering a separate judgment of conviction and sentence on the jury's verdict finding [Appellant] guilty of [conspiracy]. [Cits.] Therefore, that separate judgment and sentence, even though not enumerated as error, must be vacated. [Cits.]

*White v. State*, 278 Ga. 499, 501 (2) (604 SE2d 159) (2004).

2. Appellant contends that the testimony of Flores Calderon regarding inculpatory statements allegedly made by Appellant while they were cellmates for four days violated his Sixth Amendment right to counsel as set forth in *Massiah v. United States*, 377 U. S. 201 (84 SC 1199, 12 LE2d 246) (1964). Under that case, the right to counsel is violated by the admission of incriminating statements which a government agent deliberately elicits after indictment and in the absence of counsel. *Massiah v. United States*, supra at 206.

The State argues that this issue has not been properly preserved for appellate review. Although Appellant did file a general motion in limine, he failed to raise the *Massiah* objection to the cellmate's testimony in that motion, in argument thereon, or during the testimony. Instead, defense counsel did not object on the basis asserted in this appeal until the day after the cellmate's testimony was complete.

Standard practice in Georgia has long required a party to make and obtain a ruling on an objection to evidence in the trial court, before or as the evidence is admitted, in order to preserve the objection for appeal, and standard practice also allows parties to raise on appeal only the same objections that were properly preserved below. [Cits.]

*Whitehead v. State*, 287 Ga. 242, 246 (2) (695 SE2d 255) (2010). Furthermore, we have disallowed "the use of a motion to strike made at any point before the jury retires as a procedural tool to object to evidence . . . ." *Sharpe v. Dept. of Transp.*, 267 Ga. 267, 271 (2) (476 SE2d 722) (1996). However, "[a]n important exception to the rule prohibiting the use of a motion to strike as a substitute for a contemporaneous objection is applicable to criminal cases." McFadden, Brewer and Sheppard, *Ga. Appellate Practice* § 9:7 (2010-2011 ed.) (also noting an " 'exception to the exception' with regard to search and seizure claims concerning tangible physical evidence"). Under *Sharpe*, "where a criminal defendant alleges evidence presented was inadmissible because it was obtained in violation of his constitutional rights, he may properly move to strike the evidence at any point before the jury retires. [Cit.]" *Gilliam v. State*, 240 Ga. App. 158, 159 (1) (522 SE2d 766) (1999). In this case, Appellant did move to strike Calderon's testimony prior to closing arguments, which was of course before the jury retired. Having already argued that Calderon acted as a State agent in obtaining the incriminating statements, Appellant relied on additional testimony by the lead detective characterizing Calderon as a professional informant and admitting that he and other officers had something to do with the transfer of Calderon to a close proximity to Appellant. Accordingly, we conclude that the *Massiah* issue has not been waived.

The trial court denied the motion to strike, ruling that, although Calderon had provided information on prior occasions in connection with other investigations, he was not a professional informant in the sense that he was paid or in any way necessarily engaged by the State. These findings were supported by the evidence. The overwhelming majority of federal and state jurisdictions recognize

that an informant must be a government agent before the protections in *Massiah* are implicated and further recognize that this agency inquiry is separate from whether the informant "deliberately elicited" information. [Cits.] . . . Although there are some differences in the approaches of the various jurisdictions, they are unified by at least one common principle: to qualify as a government agent, the informant must at least have some sort of agreement with,

or act under instructions from, a government official. . . . And several courts have expressly held that the analysis does not change even if the government is aware of the entrepreneurial inmate's self-seeking tendencies and government officials believe — or even hope — that the inmate will elicit information from the defendant. [Cits.] . . . Various jurisdictions also agree that a person's past service as a government informant in unrelated cases does not necessarily mean that the person is a government agent in the case at hand. [Cits.] . . . [S]uch evidence is simply something the factfinder can consider in its discretion. [Cits.] . . . [Three federal circuits go further and] hold that an informant is not a government agent in a given case unless he has been instructed to obtain information from that defendant; any general agreement to obtain information about crime is deemed irrelevant. [Cits.]

*Manns v. State*, 122 SW3d 171, 182-186 (II) (B) (4) (Tex. Crim. App. 2003). Likewise, placement of an informant with such "past service" into the defendant's cell may be a factor in some jurisdictions but is not in many others. *Manns v. State*, supra at 187 (II) (B) (4). Furthermore, an informant's receipt of a benefit or reward for the information may constitute some evidence of a prior agreement if the "benefit had already been promised at the time the informant elicited the information; if not, later receipt of a benefit is of no consequence. [Cits.]" *Manns v. State*, supra at 188 (II) (B) (4). As this Court has stated, " '[a]n inmate who acts upon the expectation of an unpromised reward does not thereby become an agent for the state.' [Cit.]" *Burgan v. State*, 258 Ga. 512, 515 (5) (371 SE2d 854) (1988).

A thorough review of the testimony of both the lead detective and Calderon shows that they did not have any agreement and that Calderon had not been promised any payment, lenient treatment, or other help in return for any evidence that he might produce. *Baxter v. State*, 254 Ga. 538, 546 (12) (331 SE2d 561) (1985) (distinguishing on this basis *United States v. Henry*, 447 U. S. 264 (100 SC 2183, 65 LE2d 115) (1979), on which Appellant relies). "What [Calderon] hoped to get for his testimony went to his credibility, not to the admissibility of his testimony." *Burgan v. State*, supra. The trial court was not required to draw an inference, contrary to that testimony, of an agreement between the State and Calderon merely from his placement in Appellant's cell. *United States v. Taylor*, 800 F2d 1012, 1016 (I) (A) (10th Cir. 1986). Moreover, Appellant's testimony shows that he viewed that placement as coincidental. The trial court expressly considered Calderon's past service to investigators and determined that he was nevertheless not a State agent. The

fact that Appellant separately spoke to his cousins regarding their knowledge of and involvement in the crimes is not relevant to that determination, although it may be relevant to his credibility. Furthermore, all of these facts "do not amount to an instruction to [Calderon] to get information about [Appellant] in particular." *United States v. Johnson*, 338 F3d 918, 921 (II) (8th Cir. 2003).

> In the absence of any express or implied *quid pro quo* underlying the relationship between [Calderon] and the [State], [cit.], and in the absence of any instructions or directions by the [State], we hold that [Calderon] was not a [State] agent. [Appellant's] right to counsel was not violated even if [Calderon] had deliberately elicited incriminating statements from [Appellant].

*United States v. Taylor*, supra. Moreover, there is no evidence whatsoever that Calderon deliberately elicited the incriminating statements.

> [A] defendant does not make out a violation of the [Sixth Amendment] right [to counsel] simply by showing that an informant, either through prior arrangement or voluntarily, reported his incriminating statements to the police. Rather, the defendant must demonstrate that the police and their informant took some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks.

*Kuhlmann v. Wilson*, 477 U. S. 436, 459 (IV) (A) (106 SC 2616, 91 LE2d 364) (1986).

3. Appellant also contends that the trial court violated Uniform Superior Court Rule (USCR) 32.1 by placing him on a two-hour call for trial without seven days notice and further erred by denying relief under OCGA § 17-16-6 for the State's failure to comply with the reciprocal discovery requirements in a timely manner pursuant to OCGA § 17-16-4. Appellant insists that, contrary to reasoning of the trial court, he did not waive his rights under either USCR 32.1 or OCGA § 17-16-6 by filing a demand for speedy trial under OCGA § 17-7-170.

The remedies for the State's failure to comply with the reciprocal discovery requirements include a continuance and, "upon a showing of prejudice and bad faith," exclusion of the evidence not disclosed. OCGA § 17-16-6. Indeed, excluding evidence is a particularly " 'harsh sanction and should be imposed only where there is a showing of prejudice to the defense and bad faith by the State.'

[Cits.]" *Bryant v. State*, 288 Ga. 876, 888 (9) (b) (708 SE2d 362) (2011).

> OCGA § 17-16-6 . . . also permits the trial court to "enter such other order as it deems just under the circumstances." " ' "In enacting this statute, the legislature did not impose a rigid formulation or grant an exclusive remedy for a defendant or a fatal consequence to the State for failure to comply with the discovery mandates. Instead, it cloaked the trial court with the discretion to use its own judgment to ensure a fair trial." ' (Cit.)" [Cit.] "The trial court has latitude in fashioning an appropriate remedy, and we will not reverse its decision absent an abuse of discretion. (Cit.)" [Cit.]

*Norris v. State*, 289 Ga. 154, 156 (2) (709 SE2d 792) (2011).
Furthermore, " 'compliance with Rule 32.1 must be judged in the circumstances of each case.' [Cits.]" *State v. Hitchcock*, 285 Ga. App. 140, 142 (645 SE2d 631) (2007).

> [I]n a case in which compliance with USCR 32.1's seven-day notice of trial requirement would cause the state to violate a defendant's right to a speedy trial, a trial court retains the discretion to proceed to trial in accordance with the defendant's speedy trial demand. [Cits.]

*Trimm v. State*, 297 Ga. App. 861, 865 (678 SE2d 567) (2009).

> Under appropriate circumstances, it has been held even where the case is called immediately following the return of an indictment, that there can be no presumption that a defendant is not ready for trial nor error in proceeding with trial. [Cit.]

*Croft v. State*, 180 Ga. App. 705, 706 (350 SE2d 34) (1986).
In early January 2010, when Appellant was first arraigned, the trial court gave defense counsel a date in early August 2010 when the case would appear on a case management calendar in order to ensure that all discovery was provided in a timely manner and that no other issue would prevent the case from proceeding to trial. However, Appellant filed a demand for speedy trial on January 27, 2010 and was informed on February 25, 2010 that discovery materials were then available and had been mailed to defense counsel. On Monday, March 1, 2010, the case was placed on the two-hour call, and defense counsel was handed 46 discs containing all discovery materials. Appellant's attorney was released from the two-hour call on March 3

and told to report for trial five days later on March 8. On March 4, Appellant filed a motion for a ten-day continuance and a motion in limine to exclude any and all evidence not supplied to his counsel within ten days prior to trial as required by OCGA § 17-16-4. See OCGA § 17-16-6. On March 8, defense counsel told the trial court that she could not open seven of the discs even after receiving replacements. The trial court explained, month by month and week by week, that its calendar was full of civil and criminal trials and hearings through the month of June, the last day of which was the deadline for compliance with the speedy trial demand. The court concluded that it was not required to continue this case and thereby create serious scheduling issues due to its very heavy docket. However, the trial court heard in some detail what discovery material defense counsel had been able to review and stated that it would consider any specific evidence that defense counsel brought to its attention during trial as appropriate for exclusion due to the timing of discovery. The ensuing trial lasted six days.

Under all of the circumstances, we find that the trial court did not abuse its broad discretion under OCGA § 17-16-6 by denying a continuance and refusing the harsh remedy of evidence exclusion for the untimeliness of discovery. See *Smith v. State*, 257 Ga. App. 88, 90 (3) (570 SE2d 400) (2002), overruled on other grounds, *Patterson v. State*, 278 Ga. App. 168, 170 (628 SE2d 618) (2006). Instead, the court used its judgment to fashion a remedy appropriate to a case in which there was a speedy trial demand and no other reasonable time to proceed with the rather lengthy trial within the constraints of that demand. Moreover, Appellant has not pointed out where in the record he ever attempted to avail himself of that alternative remedy or otherwise complained that he was surprised by, or that he lacked time to prepare properly for, any particular evidence. See *Swanson v. State*, 282 Ga. 39, 42-43 (3) (644 SE2d 845) (2007); *McIntyre v. State*, 302 Ga. App. 778, 782 (3) (691 SE2d 663) (2010); *Smith v. State*, supra.

As for USCR 32.1, the trial court did not wholly fail to comply with that rule's seven-day notice requirement, but rather gave at least five days notice. Compare *Clark v. State*, 259 Ga. App. 573, 576 (578 SE2d 184) (2003). Furthermore, "it was apparent that by his demand for trial [Appellant] had shortened the time for trial which constituted a factor for the trial court to consider when setting the trial date." *Croft v. State*, supra. The trial court's statements during its colloquy with counsel were tantamount to a ruling that its calendar did not reasonably allow for Appellant's case to be continued within the time permitted by OCGA § 17-7-170 and that therefore his demand for speedy trial could not be met if a continuance was granted. In other words, "the trial court was attempting to

comply with the demand for trial, and the only way to do so was by deviating from the notice requirement of USCR 32.1. [Cit.]" *Linkous v. State*, 254 Ga. App. 43, 47 (561 SE2d 128) (2002), aff'd, 276 Ga. 171 (575 SE2d 456) (2003). "Control of the trial calendar is vested solely with the trial court. [Cit.]" *State v. Hitchcock*, supra. "In requiring [Appellant] to proceed with trial, the trial court did not err notwithstanding any deviation from USCR 32.1." *Kellibrew v. State*, 239 Ga. App. 783, 785 (2) (521 SE2d 921) (1999).

*Judgments affirmed in part and vacated in part. All the Justices concur.*

DECIDED JULY 11, 2011.

*Cathy M. Alterman*, for appellant.

*Paul L. Howard, Jr., District Attorney, Paige R. Whitaker, Christopher M. Quinn, Assistant District Attorneys, Samuel S. Olens, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Sheila E. Gallow, Assistant Attorney General*, for appellee.