## S11A1364. JEFFERS v. THE STATE.
### (721 SE2d 86)

THOMPSON, Justice.

Appellant Eliot Ellorton Jeffers was convicted of malice murder and other related offenses in connection with the stabbing death of Jocilyn Dawn Williams and the aggravated assault of Daniel J. Stringfellow.[1] On appeal, Jeffers challenges certain evidentiary rulings of the trial court, and he asserts that he was denied effective assistance of trial counsel. Finding no error, we affirm.

Viewed in a light most favorable to the verdict, the evidence shows that Williams rushed into a fast-food restaurant managed by Stringfellow, her boyfriend, and asked to hide in his office. She explained that Jeffers, her ex-boyfriend, was following her. Stringfellow took Williams to the office and allowed her to remain there while he returned to his duties in the dining room. Moments later, Jeffers entered, approached Stringfellow and another employee, and asked if they had seen Williams. When they denied seeing her, Jeffers left. After ascertaining that Jeffers had left the parking area, Stringfellow walked Williams to her car.

Williams returned to the restaurant about two hours later. She was seated with Stringfellow in a booth when Jeffers entered, approached Williams, and asked her to go outside. Williams refused. Jeffers then left the restaurant, circled around the building, and

---

[1] On January 25, 2007, a Cobb County grand jury returned an indictment charging Jeffers with malice murder, felony murder while in the commission of an aggravated assault, and possession of a knife during the commission of an aggravated assault in connection with the stabbing death of Jocilyn Dawn Williams, aggravated assault and aggravated battery of Daniel J. Stringfellow, and possession of a knife during the commission of the aggravated assault of Stringfellow. The crimes occurred on October 30, 2006. Trial commenced on November 3, 2008, and on November 13, 2008, a jury found Jeffers guilty as charged. He was sentenced on December 19, 2008 to life imprisonment for malice murder, 20 consecutive years for aggravated assault, 20 consecutive years for aggravated battery, plus five consecutive years for each of the weapons offenses. The felony murder count was vacated under *Malcolm v. State*, 263 Ga. 369 (434 SE2d 479) (1993). Jeffers filed a motion for new trial on December 23, 2008, which was amended on August 30, 2010, and denied on September 28, 2010. A notice of appeal was filed on October 13, 2010. The appeal was docketed to the September 2011 term of this Court and was orally argued on September 20, 2011.

minutes later reentered through the back door. He approached the booth, wielded a large knife, and then fatally stabbed Williams in the chest, and injured Stringfellow as he came to her defense. Jeffers was subdued by Stringfellow and other employees and held until the police arrived. The entire attack was filmed on video surveillance cameras.

1. When construed most strongly in support of the verdicts, the evidence was sufficient to enable a rational trier of fact to find Jeffers guilty beyond a reasonable doubt of the crimes for which he was convicted, and to reject Jeffers' insanity defense. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Jeffers submits that the trial court erred by allowing the prosecutor to state, during closing arguments, that Jeffers had "flipped a bird" at someone in the courtroom during the course of the trial. On appeal, Jeffers claims that the argument was improper because there was no showing that Jeffers actually made the obscene gesture, and because the comment impugned his character.

First, there was no contemporaneous objection to the argument; therefore, the issue is waived for purposes of appeal. *Martin v. State*, 281 Ga. 778, 780 (2) (642 SE2d 837) (2007) (" 'the contemporaneous objection rule . . . provides that counsel must make a proper objection on the record at the earliest possible time to preserve for review the point of error' "). Jeffers nonetheless asserts that the court sua sponte should have prevented the jury from considering the remark under OCGA § 17-8-75 ("[w]here counsel . . . make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same"). Jeffers offered no evidence at the hearing on the motion for new trial; his counsel on motion for new trial argued that the gesture did not take place, while the assistant district attorney who tried the case argued to the contrary. "[T]he burden is always on the appellant in asserting error to show it affirmatively by the record." (Citation and punctuation omitted.) *Westmoreland v. State*, 287 Ga. 688, 696 (1) (699 SE2d 13) (2010). Jeffers offered no evidence that the gesture was incorrectly attributed to him. Furthermore, a prosecutor is permitted to comment on a defendant's courtroom demeanor in closing argument. *Hardnett v. State*, 285 Ga. 470 (5) (678 SE2d 323) (2009) (prosecutor allowed to argue that defendant made "throat slashing" gestures to the jury). Accordingly, we must apply the presumption of regularity and hold that the trial court discharged its duties properly. *Westmoreland*, supra at 697.

3. Jeffers recasts his claim of improper closing argument by the prosecutor as ineffective assistance of trial counsel because of counsel's failure to object thereto.

In order to prevail on a claim of ineffective assistance of counsel

under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), appellant "'must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. [Cit.]'" *Westmoreland*, supra at 691 (3). We need not analyze the deficient performance prong of *Strickland* if we determine that the prejudice prong has not been satisfied. *Peterson v. State*, 284 Ga. 275 (663 SE2d 164) (2008). Even assuming arguendo that an objection to the offending argument would have had merit, but see Division 2, supra, Jeffers has not shown a reasonable probability that the outcome of the trial would have been different had counsel made the objection. See *Lambert v. State*, 287 Ga. 774 (2) (700 SE2d 354) (2010) (where evidence of guilt is overwhelming, a defendant cannot demonstrate the required prejudice under *Strickland*).

4. Jeffers submits that the trial court erred in allowing certain hearsay statements into evidence under the necessity exception to the hearsay rule, OCGA § 24-3-1 (b). Specifically, Jeffers asserts that the statements lacked the "particularized guarantees of trustworthiness" necessary for their admission.[2]

Jeffers filed a pretrial motion in limine in which he sought to preclude the State from presenting through Williams' friends and co-workers Williams' hearsay statements concerning her relationship with Jeffers. At a pretrial motions hearing, the prosecutor described the nature of the relationship each witness had with Williams and the anticipated testimony of each witness; no witnesses testified at the hearing. It was agreed that the court would make a preliminary determination based on the State's proffer as to whether each witness would be permitted to testify at trial, and if so allowed, defense counsel would be given the opportunity to voir dire the witness in advance of their direct testimony at trial and perfect their objection.

(a) *Stringfellow*. On direct examination by the State, Stringfellow was asked how Williams characterized her relationship with Jeffers. Stringfellow replied, "She told me that she was unhappy with him. He cheated on her. She told me that he had beat her before. He kind of follows her around when she doesn't really know it." The evidence, which came in just after the lunch break, was received without objection, and counsel did not avail themselves of the opportunity to voir dire the witness. Stringfellow's testimony continued throughout the afternoon. At the end of the day, the witness

---

[2] There is no contention, nor do we find, that the statements were testimonial in nature under *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004).

was discharged, and the jury was dispersed for the evening, where-upon Jeffers' counsel moved for mistrial on the ground that their client's character had been improperly introduced into evidence through Stringfellow's earlier testimony. On appeal, Jeffers asserts that the testimony constituted inadmissible hearsay.

> Standard practice in Georgia has long required a party to make and obtain a ruling on an objection to evidence in the trial court, before or as the evidence is admitted, in order to preserve the objection for appeal, and standard practice also allows parties to raise on appeal only the same objections that were properly preserved below.

*Higuera-Hernandez v. State*, 289 Ga. 553, 555 (2) (714 SE2d 236) (2011). While the pretrial motion in limine sought to exclude the testimony on hearsay grounds, it was agreed that counsel would renew any objection they may have to the witness' testimony at trial. Jeffers did not timely object at trial, and the untimely motion for mistrial was based on improper character evidence, not on hearsay grounds as asserted on appeal. Thus, any claim as to the admissibility of Stringfellow's testimony was waived. Id.

(b) *Modupe.* After establishing that Williams and Dara Modupe had been co-workers and had developed a close confidential relationship, the State elicited testimony from Modupe that Williams told her she and Jeffers had been in a "tumultuous" relationship; that Williams was at "her wits end" with him; that Jeffers had been "saying mean things to her"; that Williams was afraid Jeffers would be "very angry" if he found out she was dating someone else; and that she had been followed home from work one night by a car without lights and that she believed Jeffers to be the driver. The foregoing was introduced without any hearsay objections from Jeffers. Again, this claim has been waived on appeal. *Higuera-Hernandez*, supra at 555 (2).

(c) *Hull.* Hillary Hull and Williams had been roommates for a year. Shortly after they moved in together, Williams disclosed to Hull that Jeffers had beaten her. Jeffers' counsel asked to voir dire the witness outside the presence of the jury. Although it was established that Williams made the disclosure to Hull shortly after they had gotten to know each other, they subsequently became "best friends" and continued that relationship until Williams' death. Over Jeffers' objection that Hull's testimony lacked particularized guarantees of trustworthiness, the witness was permitted to testify Williams told her Jeffers had come into their home on one occasion and had beaten her. Hull also identified photographic evidence of bruises on Will-

iams' body resulting from the beating.

> In order for hearsay to be admitted under the necessity exception, two requirements must be satisfied: "necessity" and "particularized guarantees of trustworthiness." [Cits.] "Necessity" is demonstrated when the declarant is deceased, when the statement is shown to be relevant to a material fact, and when the statement is more probative of the material fact than other evidence that may be produced and offered. [Cit.] The requirement of "particularized guarantees of trustworthiness" is satisfied when the declaration is coupled with "circumstances which attribute verity to [the declaration]." [Cit.]

*Glenn v. State*, 288 Ga. 462, 467 (3) (704 SE2d 794) (2010). Whether testimony was accompanied by particularized guarantees of trustworthiness is a matter for the trial court's discretion. *Tuff v. State*, 278 Ga. 91 (2) (597 SE2d 328) (2004). The confidential nature of the relationship coupled with Hull's identification of bruises sustained by Williams at the time of the beating were sufficient to attribute verity to the hearsay declarations. The trial court did not abuse its discretion in admitting Hull's testimony. Id.

(d) *Battiste*. Tameka Battiste and Williams were co-workers and friends who confided in each other and discussed their personal lives and relationships. Williams told Battiste that Jeffers was "controlling," and that she was not happy and wanted to end the relationship. A few weeks before her death, Williams told Battiste that she ended the relationship with Jeffers but was "nervous" about the breakup. Williams also disclosed that Jeffers was "harassing her, calling her, following her, stalking her, coming to the job." At that point defense counsel moved for a mistrial on the ground that the prosecutor had been told to caution her witnesses to refrain from referring to Jeffers as a stalker as he was not charged with that crime. The motion was denied, and with the agreement of counsel, the court instructed the jury that the defendant is on trial for the charges contained in the indictment only and the jury should not consider allegations of any other crimes. Counsel acquiesced in the curative instruction and did not renew the motion for mistrial; therefore, any claim of error is waived for purposes of appeal. *Thomason v. State*, 281 Ga. 429 (13) (637 SE2d 639) (2006).

(e) *Lawrence*. Williams met Amanda Lawrence when the two were in high school, and they remained close friends. When Williams graduated from high school she moved in with Lawrence and her family while she attended college. The two shared a room for several years and had a type of "sister" relationship, up until August 2005

when Williams moved out and their relationship became more "distant." In accordance with the court's ruling at the pretrial motions hearing, defense counsel was permitted to voir dire the witness to determine the degree of trustworthiness of statements Williams made to her. Over defense counsel's renewed motion in limine, the trial court allowed Lawrence to testify to declarations Williams made to her during the time they shared a confidential relationship, but not beyond that time. Lawrence testified that Williams told her on one occasion that Jeffers grabbed her, threw her down, attempted to choke her, and had beaten her severely.

> The trial court does not abuse its discretion when it uses the necessity exception to admit hearsay testimony that relates an uncontradicted statement made by an unavailable witness to one in whom the declarant placed great confidence and to whom the declarant turned for help with problems.

*Tuff*, supra at 93 (2). Under the circumstances, we find no abuse of the court's discretion in admitting the hearsay testimony under the necessity exception. See also *Azizi v. State*, 270 Ga. 709 (2) (a) (512 SE2d 622) (1999) (statements to a sister in whom the declarant placed great confidence and to whom she turned for help possessed sufficient indicia of trustworthiness).

5. Finally, Jeffers asserts that the trial court erred in failing to give the jury curative instructions with respect to the use of the word "stalking" by another witness who had been instructed to avoid that word. Defense counsel made a contemporaneous motion for mistrial, which the trial court denied. Later in the proceedings, the court reminded counsel that it had offered to give a curative instruction with regard to the stalking reference, but had overlooked doing so. The court again offered to give such an instruction, but trial counsel declined, opining that it was now too late for the instruction to cure the defect because several hours had passed since the witness made the objectionable reference. "Since defense counsel declined the trial court's offer to give curative instructions to the jury, appellant will not now be heard to complain." (Punctuation omitted.) *Pickren v. State*, 272 Ga. 421, 426 (9) (530 SE2d 464) (2000).[3]

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 9, 2012.

*Michael H. Saul*, for appellant.

---

[3] We also note that the court gave a similar instruction later in the proceedings, informing the jury that it could not consider evidence of uncharged crimes. See Division 4 (d), supra.

*Patrick H. Head, District Attorney, Ann B. Harris, Anna G. Cross, Assistant District Attorneys, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Dana E. Weinberger, Assistant Attorney General*, for appellee.