S12A0671. BAILEY v. THE STATE.
(728 SE2d 214)

HINES, Justice.

Deigo Bailey appeals his convictions for malice murder, conspiracy to commit armed robbery, and possession of a firearm during the commission of a crime in connection with the fatal shootings of Jerry Bell and Wilbert Deroulot. He challenges the sufficiency of the evidence and the admission into evidence of certain testimony. Finding the challenges to be without merit, we affirm.[1]

---

[1] The crimes occurred on April 4, 2009. On June 26, 2009, a Cobb County grand jury returned a thirteen-count indictment against Bailey, Shawndel Ford, Kendra Moore, and Erica Stokes: Count 1 – the malice murder of Jerry Bell; Count 2 – the malice murder of Wilbert Deroulot; Count 3 – the felony murder of Bell while in the commission of aggravated assault; Count 4 – the felony murder of Deroulot while in the commission of aggravated assault; Count

The evidence at trial, construed in favor of the verdicts, showed the following. Bell and Deroulot sold drugs and held "strip parties" at a rented house in Cobb County. Bailey and his co-indictees Ford, Stokes, and Moore conspired to rob them. Bailey's brother, who was dating Stokes at the time, was in prison for murder, and Bailey and Stokes wanted to raise money to hire a lawyer for him. Over the course of a month, the two developed a plan in which Stokes and another woman would distract Bell and Deroulot inside the house and text Bailey when the moment was right for the robbery.

On the night of April 4, 2009, the four co-indictees met at Stokes's home. Ford brought a handgun and an assault rifle to the house. Bailey picked up the rifle as they left to go to the victims' house. The four took two vehicles, with Stokes taking Moore in her car and Bailey driving his girlfriend's black Honda with Ford as a passenger. The black Honda had a distinctively loud muffler. Upon arrival, Bailey and Ford waited outside while Moore and Stokes entered the house. Stokes texted Bailey, updating him on the situation inside. Sometime after 3:00 a.m., Bailey and Ford walked up to the house and hid behind a green vehicle parked in the backyard. Not long after, Bell and Deroulot walked out onto their back deck. Bailey and Ford opened fire, with Ford wielding the rifle and Bailey using the handgun. Deroulot was shot nine times and Bell was shot six times, and

---

5 – the felony murder of Bell while in the commission of conspiracy to commit armed robbery; Count 6 – the felony murder of Deroulot while in the commission of conspiracy to commit armed robbery; Count 7 – the aggravated assault with a deadly weapon of Bell; Count 8 – the aggravated assault with a deadly weapon of Deroulot; Count 9 – conspiracy to commit armed robbery; Count 10 – possession of a firearm during the commission of aggravated assault and conspiracy to commit armed robbery involving Bell and using a .40 caliber handgun; Count 11 – possession of a firearm during the commission of aggravated assault and conspiracy to commit armed robbery involving Bell and using a 7.62X39 assault rifle; Count 12 – possession of a firearm during the commission of aggravated assault and conspiracy to commit armed robbery involving Deroulot and using a .40 caliber handgun; and Count 13 – possession of a firearm during the commission of aggravated assault and conspiracy to commit armed robbery involving Deroulot and using a 7.62X39 assault rifle. Bailey was individually tried before a jury October 25-29, 2010, and was found guilty on all counts. On October 29, 2010, he was sentenced to life in prison on Count 1; life in prison on Count 2, to be served consecutively to the sentence on Count 1; ten years in prison on Count 9, to be served concurrently with the sentence on Count 1; five years in prison collectively on Counts 10 and 11, to be served consecutively to the sentence on Count 2; and five years in prison collectively on Counts 12 and 13, to be served consecutively to the sentences on Counts 2, 10, and 11. The verdicts on Counts 3, 4, 5, and 6 stood vacated by operation of law, and those on Counts 7 and 8 merged for the purpose of sentencing. A motion for new trial was filed on November 12, 2010, and the motion was denied on March 17, 2011. A notice of appeal to the Court of Appeals was filed on April 15, 2011, and an amended notice of appeal to the Court of Appeals was filed on September 6, 2011. The appeal was docketed in the Court of Appeals on November 16, 2011, and the Court of Appeals transferred it to this Court on December 8, 2011. The case was docketed to the April 2012 term of this Court, and the appeal was submitted for decision on the briefs.

both died from their wounds. Spent bullet casings matching the two guns were found in the backyard.

Neighbors heard the gunfire and called the police. Bailey and Ford fled the scene in the Honda. Neighbors saw a dark-colored vehicle leave the scene and noted its distinct muffler sound. A responding officer passed a vehicle meeting the neighbors' descriptions, but lost the car before it could be stopped. Ford tossed the rifle out of the car's window. Stokes and Moore also fled the scene, driving to the home of Bailey's cousin, Tameka Cook, where Stokes told Cook that Bailey and Ford had killed the two victims. Stokes and Moore then met with Bailey and Ford, and Ford complained that the entire operation had been a waste of time inasmuch as they had come away without drugs or money. Stokes asked Bailey why they had opened fire, and he told her it was because the victims came outside. Bailey later told a friend that he had fired the handgun, but did not know if he hit anyone.

All three co-indictees testified for the State at Bailey's trial.

1. Bailey contends that the evidence was insufficient to support his convictions because it showed that he renounced and abandoned the conspiracy to commit armed robbery and that Ford fatally shot both of the victims.

Certainly, an initial coconspirator can avoid the effects of the crime of conspiracy to commit a crime[2] if that person withdraws from the agreement to commit a crime prior to an overt act in furtherance of the crime.[3] Furthermore, it is an affirmative defense to a charge of criminal attempt to commit a crime[4] when the individual abandons

---

[2] OCGA § 16-4-8 provides:

A person commits the offense of conspiracy to commit a crime when he together with one or more persons conspires to commit any crime and any one or more of such persons does any overt act to effect the object of the conspiracy. A person convicted of the offense of criminal conspiracy to commit a felony shall be punished by imprisonment for not less than one year nor more than one-half the maximum period of time for which he could have been sentenced if he had been convicted of the crime conspired to have been committed, by one-half the maximum fine to which he could have been subjected if he had been convicted of such crime, or both. A person convicted of the offense of criminal conspiracy to commit a misdemeanor shall be punished as for a misdemeanor. A person convicted of the offense of criminal conspiracy to commit a crime punishable by death or by life imprisonment shall be punished by imprisonment for not less than one year nor more than ten years.

[3] OCGA § 16-4-9 states:

A coconspirator may be relieved from the effects of Code Section 16-4-8 if he can show that before the overt act occurred he withdrew his agreement to commit a crime.

[4] OCGA § 16-4-1 provides:

A person commits the offense of criminal attempt when, with intent to

his "effort to commit the crime or in any other manner prevented its commission under circumstances manifesting a voluntary and complete renunciation of his criminal purpose."[5] But, the evidence, as outlined above, shows that this was far from Bailey's situation. Bailey is relying upon his version of events, which is contradicted by, inter alia, the physical evidence at trial, which included but was not limited to, the facts that shell casings from two guns were found at the murder scene and in positions indicating that there were two weapons fired by different individuals. Even assuming arguendo that the circumstances offered by Bailey demonstrate his complete renunciation of the plan to rob the victims and that he did not fire at them, the jury was free to reject a version of events favorable to him.[6] *Hall v. State*, 287 Ga. 755, 756 (1) (699 SE2d 321) (2010).

The evidence was sufficient to enable a rational trier of fact to find Bailey guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Bailey also contends that the trial court erred in permitting into evidence three instances of what he characterizes as "inaccurate and prejudicial hearsay testimony that [he] was involved in the two murders."[7] However, these complaints are not properly reviewed on

---

commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime.

[5] OCGA § 16-4-5 states in full:

(a) When a person's conduct would otherwise constitute an attempt to commit a crime under Code Section 16-4-1, it is an affirmative defense that he abandoned his effort to commit the crime or in any other manner prevented its commission under circumstances manifesting a voluntary and complete renunciation of his criminal purpose.

(b) A renunciation of criminal purpose is not voluntary and complete if it results from:

(1) A belief that circumstances exist which increase the probability of detection or apprehension of the person or which render more difficult the accomplishment of the criminal purpose; or

(2) A decision to postpone the criminal conduct until another time.

[6] In argument, Bailey also cites his failure to commit an earlier robbery of a fast food restaurant, i.e., his "chickening out" supports his abandonment defense. However, as the State points out, it is questionable whether that failure to commit the earlier robbery was due to Bailey's change of heart about committing such an offense or rather because the situation at the site of the proposed robbery was not as favorable as Bailey had anticipated. Even if the withdrawal from that crime was due to Bailey's fear, the finder of fact could conclude that such action only strengthened rather then weakened Bailey's resolve to commit the armed robbery and related crimes in this case.

[7] Bailey cites testimony of Stokes that she told Cook that the victims were dead and that Ford and Bailey had killed them; testimony of Cook that Stokes told her that Bailey killed the

appeal because Bailey did not make any contemporaneous objection to the cited testimony, on the basis of hearsay or otherwise. *Jeffers v. State*, 290 Ga. 311, 314 (4) (a) (721 SE2d 86) (2012). Even so, the crux of the testimony is Stokes's inculpation of Bailey, and as such statements were made to Cook shortly after the murders but before the criminal enterprise was at an end, Stokes's declarations were admissible into evidence against Bailey. OCGA § 24-3-5.[8]

*Judgments affirmed. All the Justices concur.*

DECIDED MAY 29, 2012.

*Frederick M. Scherma*, for appellant.

*Patrick H. Head, District Attorney, Amelia G. Pray, Jesse D. Evans, Assistant District Attorneys, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine R. Thrower, Assistant Attorney General*, for appellee.

---

victims, but that Bailey had denied it to Cook; and testimony of a detective that Cook said that Stokes told her that Bailey had killed the victims, which Bailey now terms "double hearsay."

[8] OCGA § 24-3-5 provides:

> After the fact of conspiracy is proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all.