DECIDED NOVEMBER 2, 2015 —
RECONSIDERATION DENIED DECEMBER 10, 2015.

*Bell & Brigham, John C. Bell, Jr., Leroy W. Brigham*, for appellants.

*Cathy Hampton, Seth R. Eisenberg, Robin J. Shahar*, for appellees.

*Quinn, Connor, Weaver, Davies & Rouco, John L. Quinn; Michael T. McGonigle; Mary C. Cooney; Lawrence J. LoRusso; Donald C. English; Gwin C. Hall*, amici curiae.

## S15A0836. DIXON v. THE STATE.
(779 SE2d 290)

MELTON, Justice.

Following a joint jury trial with his co-defendant, James Platt, Jarrett Dixon was found guilty of the felony murder and malice murder of Santos Palacios-Vasquez, the voluntary manslaughter of Antonio Clark, aggravated assault, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon.[1] Dixon appeals, contending that the evidence was insufficient to support the verdicts, the trial court made improper evidentiary

---

[1] On January 26, 2010, Dixon was indicted for two counts of malice murder (one for Vasquez and one for Clark), six counts of felony murder (three counts per victim predicated on aggravated assault, conspiracy to traffic in cocaine, and possession of a handgun by a convicted felon), conspiracy to commit the crime of trafficking in cocaine, possession of a firearm by a convicted felon, and two counts of possession of a firearm during the commission of a crime.

rulings, and the trial court erred by denying his motion to strike several jurors. For the reasons set forth below, we affirm.

1. Viewed in the light most favorable to the verdicts, the record shows that, on the afternoon of September 28, 2009, Clark, Platt, and Dixon went to the apartment of Delman Higuera-Hernandez to engage in a drug transaction. Clark's girlfriend told police that, earlier that morning, she had dropped Clark off at Platt's home, where Dixon was also residing. At some point, the drug sale went awry, and gunfire ensued. Clark and Vasquez were fatally wounded, and Hernandez, Antonio Lara-Landero, and Dixon were wounded. Four different calibers of shell casings were recovered from the scene, in addition to eighty-eight grams of cocaine, and other substances that were suspected to be methamphetamine and heroin. Other apartment residents heard loud noises coming from Hernandez's apartment at approximately 4:00 p.m. and observed two men matching Dixon and Platt's descriptions wearing white t-shirts and jeans leave the building in a silver sedan with tinted windows. Hernandez was taken to Northside Hospital at approximately 4:20 p.m., where he told a nurse that he had been shot by an intruder. Meanwhile, Platt took Dixon to Grady Memorial Hospital, and video cameras at the hospital showed Platt carrying Dixon inside after exiting a silver Pontiac Grand Prix, which Platt was known to drive. Blood samples discovered at the scene of the shooting were positively matched to both Hernandez and Dixon, and a box of 5.7 millimeter bullets was discovered in another silver sedan, this one an Infiniti, that was leased to Platt and discovered parked at the crime scene. There was some testimony that Platt had loaned the Infiniti to Clark on the day of the shootings. The medical examiner recovered a bullet from Vasquez which had blue plastic on it, and the bullets taken from Platt's car had blue polymer tips. A search of the residence shared by Platt and Dixon uncovered a white t-shirt stained with Dixon's blood. The search also uncovered Dixon's cell phone, which contained messages sent to Clark in the minutes before the drug transaction.

Following a jury trial ending on February 14, 2012, Dixon was found guilty of all the crimes for which he had been charged, except that he was found guilty of the lesser included offense of voluntary manslaughter instead of the malice murder of Clark and he was acquitted of conspiracy to traffic in cocaine. The trial court sentenced Dixon to life imprisonment for the malice murder of Vasquez, twenty consecutive years for the voluntary manslaughter of Clark, and five years for each handgun possession charge to be served consecutively to the voluntary manslaughter sentence. The charges of felony murder were vacated by operation of law, *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993), and the remaining charges were merged for purposes of sentencing. On March 6, 2012, Dixon filed a motion for new trial, amended on August 21, 2013, and the trial court denied the motion on May 22, 2014. Dixon filed a timely notice of appeal, and his case, submitted on the briefs, was docketed to the April 2015 term of this Court.

Dixon instructed Clark: "We went to da apartment. Go straight back. You gonna see us." Clark responded: "There is an amigo on the front steps. We're here already." After his arrest, Dixon denied knowing any of the other defendants and fabricated a story that he had been shot in a confrontation at a gas station.

This evidence was sufficient to support the jury's findings of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

Dixon nonetheless contends that the evidence presented by the State was not sufficient to authorize his conviction because there was no evidence he directly committed the crimes and no evidence from which the jury could conclude he was a party to the crimes. Pursuant to OCGA § 16-2-20 (a), "[e]very person concerned in the commission of a crime is a party thereto and may be . . . convicted of commission of the crime." Dixon maintains that the State presented only circumstantial evidence of his guilt that did not exclude every other reasonable hypothesis except that of his guilt as a party to the crimes, as required by former OCGA § 24-4-6.[2] "[Q]uestions as to the reasonableness of hypotheses other than the guilt of the defendant are generally for the jury to decide, and this Court will not disturb a finding of guilt unless the evidence is insupportable as a matter of law." (Citation omitted.) *Lowe v. State*, 295 Ga. 623, 625 (1) (759 SE2d 841) (2014). Furthermore, this Court will not resolve evidentiary conflicts and inconsistencies. See *Flowers v. State*, 275 Ga. 592 (1) (571 SE2d 381) (2002). Mere presence at the scene of the crime and mere approval of a criminal act are insufficient to establish that a defendant was a party to the crime. "Proof that the defendant shares a common criminal intent with the actual perpetrators is necessary[.]" (Citation omitted.) *Eckman v. State*, 274 Ga. 63, 65 (1) (548 SE2d 310) (2001). But such shared criminal intent "may be inferred from the defendant's conduct before, during, and after the crime." Id. See also *Brown v. State*, 291 Ga. 887 (1) (734 SE2d 41) (2012) (where defendant asked to be picked up by a friend to go looking for those he believed had shot at him, and the driver of the car that came to pick him up fired a shot toward the victim and others the defendant identified as the ones who shot at him, killing the victim, the evidence was sufficient to support defendant's conviction for murder and other charges as a party to the crimes). In this case, the evidence showed

---

[2] Former OCGA § 24-4-6 applied at the time of Dixon's trial, but has been replaced by OCGA § 24-14-6, effective January 1, 2013. Both the former and current evidentiary statutes state: "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."

that: (1) before the crime, Dixon was texting Clark about coming to the apartment where he had already arrived in a silver sedan with Platt; (2) during the drug deal and the subsequent shootings, Dixon was in the subject apartment where his blood was later found; (3) immediately after the crime, witnesses saw two men matching Platt and Dixon's descriptions leaving quickly; (4) Dixon was rushed to the hospital by Platt in a silver Pontiac sedan; (5) ammunition of the type used to kill Vasquez was found in the silver Infiniti sedan that was also owned by Platt, with whom Dixon was living; and (6) Dixon denied knowing any of the other defendants and fabricated a story that he had been shot in a confrontation at a gas station. This evidence, though circumstantial, supported the jury's findings of guilt. Id.

2. Dixon contends that the trial court erred by allowing the admission of testimony regarding suspected narcotics other than cocaine found in the apartment where the shootings took place. As an initial matter, Dixon did not preserve this issue for appellate review because he made no objections to the admission of the evidence below. See *Bailey v. State*, 291 Ga. 144 (2) (728 SE2d 214) (2012). In any event, the evidence would have been admissible under the doctrine of res gestae. See, e.g., *Nash v. State*, 285 Ga. 753 (2) (683 SE2d 591) (2009).

3. Dixon contends that the trial court erred by not stopping the State during its closing argument to correct the State's facts. Specifically, Dixon argues that the State argued to the jury that a trafficking amount of cocaine had been found in the apartment despite the fact that the chain of custody for any such bags of cocaine was never proven. Dixon, however, did not object to the State's closing argument, and, as a result, he cannot raise this issue for the first time on appeal. " 'A defendant must object to the alleged impropriety at the time it occurs in order to afford the trial court the opportunity to take remedial action. (Cit.)' . . . The failure to do so generally results in a waiver of the defendant's right to urge the impropriety of the argument on appeal." *Mullins v. State*, 270 Ga. 450 (2) (511 SE2d 165) (1999). Dixon's "failure to object below so as to invoke a ruling by the trial court precludes our consideration of the merits of [this] contention that the State's closing argument was improper." Id. at 451 (2). In any event, Dixon was found not guilty of conspiracy to traffic in cocaine.

4. Dixon argues that the trial court erred by denying his motion to strike three different jurors. We have explained that an

> appellate court pays deference to the trial court's resolution
> of any equivocations or conflicts in a prospective juror's

responses. The determination of a potential juror's impartiality is within the trial court's sound discretion and the trial court will only be reversed on such matter upon finding a manifest abuse of discretion. The law does not require the striking of jurors simply because they express some doubt of their own impartiality.

(Citations and punctuation omitted.) *Grimes v. State*, 296 Ga. 337, 343 (1) (c) (766 SE2d 72) (2014). With regard to the jurors about whom Dixon complains, Juror 9, Juror 15, and Juror 25 all stated that they could lay aside whatever biases they might have, consider the evidence, and impartially decide whether the State had satisfied its burden of proof. There was no error. See *Cade v. State*, 289 Ga. 805 (3) (716 SE2d 196) (2011).

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 2, 2015 —
RECONSIDERATION DENIED DECEMBER 10, 2015.

*Brian M. Condon, Margaret E. Heinen*, for appellant.
*Paul L. Howard, Jr.*, District Attorney, *Paige Reese Whitaker, Arthur C. Walton*, Assistant District Attorneys; *Samuel S. Olens*, Attorney General, *Patricia B. Attaway Burton*, Deputy Attorney General, *Paula K. Smith*, Senior Assistant Attorney General, *Michael A. Oldham*, Assistant Attorney General, for appellee.