## S09A1856. HATCHER v. THE STATE.
### (690 SE2d 174)

HUNSTEIN, Chief Justice.

Appellant Richard Hatcher appeals his conviction for the May 2007 murder of Joseph Brooks. Finding no error, we affirm.[1]

1. Construed most strongly in favor of the verdict, the evidence adduced at trial established the following. On the evening of May 4, 2007, appellant and victim Joseph Brooks were drinking beer and smoking crack cocaine in the company of Harvey Bender and Dolores Bennett at the rooming house in Augusta where the latter three lived. In the early hours of May 5, appellant gave Brooks ten dollars with which to buy more crack cocaine, and Brooks took appellant's car to make the purchase. Some time after Brooks had left, Bender went outside and noticed appellant's car in the yard with the doors

---

[1] The murder occurred on May 5, 2007. On July 3, 2007, appellant was indicted by the Richmond County grand jury on one count of malice murder and one count of felony murder predicated on aggravated assault. At the conclusion of appellant's trial held May 20-22, 2008, the jury found appellant not guilty of malice murder but guilty of felony murder, and appellant was sentenced to life imprisonment. Appellant filed a motion for new trial on June 3, 2008, which was denied on March 31, 2009. On April 3, 2009, appellant filed a notice of appeal, which he amended on July 15, 2009. The appeal was docketed in this Court on July 27, 2009 and was thereafter submitted for decision on the briefs.

open and the lights on. Bender called out to Brooks but received no response; Bender went back inside and relayed this information to appellant. Appellant went outside, then came back inside, appearing upset, and told Bender to "give him his board," stating that he wanted "his money or his stuff." Bender handed appellant a piece of wood that appellant had been storing under Bender and Bennett's bed "in case somebody was bothering him." Appellant went back outside, and Bender heard a loud thump. A few minutes later, appellant came back inside and told Bender to get some water because he had knocked Brooks out. After Bender threw water on Brooks and failed to rouse him, appellant and Bender went back out to the car, retrieved Brooks, and carried him to his room, where Bender tried to clean the victim with a towel. Bender noticed that Brooks' flesh was cold and that he was unresponsive, and he called 911. By the time the police arrived, appellant had left.

When initially interviewed by police that morning, Bender did not implicate appellant and told police only that someone had hit Brooks over the head in the rooming house parking lot. After the initial interview, Bender learned that Brooks was dead. In a second interview approximately two hours after the first, Bender described in detail the events of the evening and appellant's involvement therein. Bender testified that he had attempted to cover for appellant in the initial interview because "he's a soldier and I'm a soldier" and he was "trained to have his back." He also testified that, before he knew Brooks had died of his injuries, he viewed the incident as "the way the street thing go," in other words, "if you get beat up for losing somebody's drugs, you get beat up." Once he realized Brooks was dead, Bender testified, he wanted to tell police the full truth.

An investigator from the Richmond County Sheriff's Department testified that when he and other officers arrived at appellant's home later that morning to arrest him, appellant opened the door wearing clothes stained with blood, which was later found to match that of the victim. As he was being handcuffed, appellant said, "I know why y'all are here . . . . I gave him $10 and he did not bring it back. . . . I knew I shouldn't have hit him. . . ."

Crime scene investigators recovered two wooden boards from the parking lot and other boards from the rear of the rooming house. Though forensic tests failed to reveal any traces of blood from the boards, expert testimony established that a single blow from such a board would not necessarily bloody the board. Investigators also found the victim's blood on the driver's side door frame of appellant's car, a broken glass vase in the backseat of the car, and shards of glass by the driver's side door.

An autopsy revealed that Brooks had died from blunt force trauma to the head, which, according to the medical examiner, had

been dealt in a single blow and could have been caused by a wooden board.

The evidence as set forth above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that appellant was guilty of the crime of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant challenges the admission at trial of an audio recording of Bender's second statement to police, asserting that, as a prior statement comporting with Bender's trial testimony, it lacked the proper foundation for admission. See *Hunt v. State*, 279 Ga. 3 (4) (a) (608 SE2d 616) (2005) (prior consistent statement admissible only if, inter alia, witness' veracity at trial placed in issue). However, appellant failed to preserve this ground of objection for appellate review. As reflected in the record, appellant's counsel failed to object to admission of the recording until some time after the recording had begun playing, and, moreover, that eventual objection was made only on relevancy grounds. Accordingly, appellant's current objection has been waived. *Thorpe v. State*, 285 Ga. 604 (8) (678 SE2d 913) (2009).

3. Appellant also asserts error in the trial court's refusal to suppress his inculpatory statements made to police at the time of his arrest on the basis that they were made without the benefit of *Miranda*[2] warnings. Specifically, appellant claims that the circumstances of his arrest, wherein appellant answered his door to face a "formidable police presence" poised to arrest him, constituted the functional equivalent of interrogation, requiring *Miranda* warnings prior to any statement he made. See *Cook v. State*, 270 Ga. 820, 825 (2) (514 SE2d 657) (1999) (functional equivalent of interrogation defined as "any words or actions . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect").

The record reflects that, on the morning of the crime, police officers went to appellant's apartment to arrest him. Upon answering his door, as the officers approached to handcuff him, appellant stated, without prompting, that he knew they were there "about the fight last night." As the officers proceeded in handcuffing him, appellant continued, stating, "I gave him $10, and he did not bring it back. I've had a crack problem for seven months. I knew I shouldn't have hit him. . . ." The officers asked appellant no questions during the arrest, other than to confirm appellant's identity, and no guns were drawn at any time during the episode. Under these circumstances, it is clear that "[appellant's] statements were spontaneous and voluntary [and] were not made in response to custodial

---

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

interrogation or its functional equivalent. [Cits.]" *Johns v. State*, 274 Ga. 23, 24 (2) (549 SE2d 68) (2001). Accordingly, this enumeration is without merit.

4. In his final enumeration of error, appellant claims that, after the jury informed the trial court it was deadlocked, the court gave an *Allen*[3] charge that was unduly coercive. The record reflects that the trial court gave the pattern *Allen* charge,[4] with one apparent slip of the tongue in which the court substituted the word "consciously" for "conscientiously," such that the court instructed the jury of its duty to reach a decision if it "consciously" could do so. As no objection was lodged at the time the charge was given, appellate review of this issue is unavailable. OCGA § 17-8-58; *Metz v. State*, 284 Ga. 614 (5) (669 SE2d 121) (2008).

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 8, 2010.

*Peter D. Johnson*, for appellant.
*Ashley Wright, District Attorney, Madonna M. Little, Assistant District Attorney, Thurbert E. Baker, Attorney General, Sara K. Sahni, Assistant Attorney General*, for appellee.

---

[3] *Allen v. United States*, 164 U. S. 492 (17 SC 154, 41 LE 528) (1896).

[4] See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.70.70, 4th ed. (2007).