**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**July 7, 2016**

# In the Court of Appeals of Georgia

A16A0328. SNEED v. THE STATE.

McMILLIAN, Judge.

In this out-of-time appeal, Lamarkas Sneed appeals the denial of his motion for a new trial after a jury convicted him of aggravated sexual battery. On appeal, Sneed asserts that the trial court erred in admitting certain evidence, in denying his motion for new trial on the grounds of ineffectiveness of counsel, and in failing to charge the jury on the issue of consent. We affirm for the reasons set forth below.

Viewed in the light most favorable to the verdict,[1] the evidence shows that at the time of the incident, the victim lived with her mother and her two younger brothers, and Sneed was temporarily staying with the family. Sneed and the victim's

---

[1] *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

mother had been involved in a romantic relationship, and Sneed is the father of the younger of the victim's brothers.

On January 24, 2011, Sneed, the victim, her mother, and her brothers were all watching a movie in her mother's bedroom. Everyone except the older of her two brothers was on the bed. Later, after the victim's older brother left the room, the victim, her mother, and her younger brother fell asleep. The victim, who was 17 years old at the time, testified that she was awakened by Sneed touching her buttocks and that he then put his fingers in her vagina. The victim said that she was too scared to speak at that point, but she tried unsuccessfully to wake up her mother by tapping her on the arm. The victim then got up and left the room without saying anything and went to her own bedroom.

Once the victim was in her room she texted her older brother to come in and also called her grandmother. The victim asked her grandmother to come over and told her that Sneed had touched her. When the victim's brother got to the victim's room, the door was locked and she was "balled up crying behind the door." The victim refused to tell her brother what happened until their grandmother got there, but after she arrived, the victim said that Sneed had touched her.

The grandmother testified that when she arrived Sneed answered the door, at which time she confronted him about touching her granddaughter. Sneed denied doing anything wrong. The victim's mother heard the grandmother and Sneed talking and came upstairs, at which point the grandmother told the mother that Sneed was "messing with your daughter while you're asleep."

At his grandmother's direction, the brother called 911. Officer T. Barnes arrived on the scene and detained Sneed. Officer Barnes proceeded into the house and spoke with the victim, whom he described as being "withdrawn" and "distraught." The victim told Officer Barnes that everyone fell asleep watching a movie and that she woke up to Sneed "rubbing her vagina, her vaginal area, and then he placed his finger inside of her. She said she wanted to scream out, but she was afraid that she would not be believed by her mother." The victim also told Officer Barnes that "she tried to stop him and he would not stop," and that she attempted to remove Appellant's hands from her pants. Officer Barnes testified that the statements given by the brother and grandmother were consistent with what the victim had told him.

Officer Barnes contacted Detective Angela Finley of the DeKalb County Police Department's Special Victims Unit. Finley met the victim and Officer Barnes at police headquarters, where the victim gave two statements to the detective, one

3

written and one verbal. The victim told Finley that her mother's boyfriend "had inappropriately touched her" and that "he had used his finger to rub on her vagina."

The victim also testified that when she was around seven or eight years old, Sneed would come into her room while she was asleep and pull the covers off of her. She told her mother about this, but her mother questioned whether it had really happened. The victim's grandmother testified that the victim recently told her that the victim had reported to her mother when she was around eight that Sneed had come into her room and lifted the covers off of her. Officer Barnes stated that at the scene the victim said to him that an incident like this had happened before but her mother did not believe her, and Finley testified that the victim told her about two other incidents where Sneed touched her inappropriately when she was five or six years old but her mother did not believe her. The mother also testified that the victim told her that Sneed touched her on "the behind" when she was seven or eight, but the mother did not believe at the time that the touch was of a sexual nature.

On the night of the incident in question, Sneed told the mother that "he didn't touch" the victim. However, a month or two later, the mother received a letter in the mail from Sneed, in which he admitted to sticking his finger in the victim's vaginal area. In the letter, Sneed claimed that the victim initiated the contact by rubbing her

4

feet on his penis. Sneed claimed that the victim did not try to stop him from touching her vagina, and, in fact, she moved to make it easier for Sneed to take her pants off and that the victim was not wearing any panties. The mother testified that such actions were uncharacteristic of her daughter.

On September 29, 2011, Sneed was convicted of aggravated sexual battery, and on April 8, 2015, the trial court denied his motion for new trial. Sneed filed his notice of appeal 35 days later, on May 13, 2015. This Court dismissed the appeal because the untimely notice was insufficient to confer jurisdiction for appellate review. However, Sneed subsequently moved for an out-of-time appeal, and the trial court granted the motion. This appeal followed.

1. In his first two enumerations of error, Sneed argues that the trial court erred in admitting testimony and evidence of pretrial statements made by several of the State's witnesses. For this Court to reverse a trial court's decision to admit evidence, the objecting party must show "error triangulation," that is, "(1) error, (2) contemporaneous objection, and (3) harm as a result of that error." (Citation and punctuation omitted.) *Scoggins v. State*, 306 Ga. App. 760, 762 (1) (703 SE2d 356) (2010). Because the record demonstrates that Sneed failed to properly object to the admission of the cited evidence, we find no error.

5

(a) Sneed argues that the trial court erred in admitting testimony from the victim's brother, grandmother, mother, and Officer Barnes regarding statements the victim made about the events on the night in question and the earlier incidents involving Sneed when the victim was younger. Sneed asserts that no foundation was laid for the admission of either prior consistent or inconsistent statements by the victim and that this evidence improperly bolstered the victim's testimony. However, Sneed failed to raise any contemporaneous objection to the cited testimony at trial and thus failed to preserve these arguments for appeal. See *Hatcher v. State*, 286 Ga. 491, 493 (2) (690 SE2d 174) (2010), overruled on other grounds by *State v. Kelly*, 290 Ga. 29 (718 SE2d 232) (2011) (argument that State failed to lay foundation for prior inconsistent statement waived where defendant raised no objection at trial); *Moore v. State*, 246 Ga. App. 163, 166 (5) (539 SE2d 851) (2000) (appellate court will not address issue of whether cited testimony improperly bolstered other witness testimony where this argument was not presented to or ruled upon by the trial court).

(b) Sneed also asserts that the trial court erred in allowing into evidence written statements given by the victim's brother and grandmother at the police station on the night of the incident and in allowing those witnesses to read their statements to the jury. Sneed's counsel objected to the introduction of both statements on the ground

6

of hearsay and added, in objecting to the brother's statement, that she "[hadn't] heard anything that's inconsistent." The trial court overruled the objections. Although the stated basis for Sneed's objections was hearsay (and possibly the failure to provide a foundation for admission of the brother's written statement as a prior inconsistent statement), he argues on appeal the trial court erred in admitting the written statements as prior *consistent* statements, which improperly bolstered the witnesses' credibility. Sneed's failure to object on the grounds urged on appeal waives the issues for appellate review. "To preserve an objection upon a specific ground for appeal, the objection on that specific ground must be made at trial, or else it is waived." (Citation and punctuation omitted.) *Scoggins*, 306 Ga. App. at 762 (1). See also *Wallace v State*, 302 Ga. App. 410, 411 (1) (691 SE2d 557) (2010) ("Failure to object to evidence on a certain ground in the trial court waives consideration of that ground on appeal.").

2. Sneed further asserts that the trial court erred in admitting testimony from Finley commenting on the victim's credibility and testimony from the victim's mother commenting on both the victim's and Sneed's credibility. Finley testified that she interviewed the victim twice. In the second interview, she sought to clarify the victim's first statement and thus the detective was "a little bit harder" on her and

7

"interrogated her a little bit more." The detective opined, "I think she was just more credible the second time when I interviewed her" because she was "more teary-eyed," never deviated from her original statement, and gave more detail about the earlier incidents. Additionally, the mother agreed with the prosecutor during direct examination that as a mother she had the ability to get to the truth when she talked to her child one-on-one, and she stated, "I knew from the way my daughter was sounding and the look on her face and the way she was acting, I knew that she was telling me the truth." In addition, the mother testified that when she received Sneed's letter asserting that the victim had provoked or consented to his touching her, she chose not to show it to her daughter because she knew that the "lies he put in there" would upset her. (All the evidence recited in this paragraph will be referred to collectively herein as the "Credibility Evidence.")

However, because Sneed failed to object to the admission of this Credibility Evidence, he has waived his right to complain on appeal, and thus there is no basis for reversal on this ground. *Kinder v. State*, 284 Ga. 148, 151-52 (4) (663 SE2d 711) (2008). See also *Andrews v. State*, 293 Ga. 701, 704 (3) (749 SE2d 734) (2013); *Bailey v. State*, 291 Ga. 144, 147-48 (2) (728 SE2d 214) (2012).

8

3. Sneed next argues that the trial court erred in denying his motion for new trial on the ground that his trial counsel was ineffective by failing to adequately object to the admission of testimony he contends was inadmissible. "[T]his Court reviews a trial court's ruling on an ineffective assistance claim on appeal by accepting the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citation and punctuation omitted.) *Brewer v. State*, 328 Ga. App. 801, 801-02 (762 SE2d 622) (2014).

In order to assert a claim of ineffective assistance of counsel, the two-prong test set forth in *Strickland v. Washington* must be satisfied. 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984). Under that test, Sneed must prove "that trial counsel's performance was deficient and but for the deficiency a reasonable probability existed that the result of the trial would have been different." (Citation omitted.) *Reynolds v. State*, 269 Ga. App. 268, 271 (2) (603 SE2d 779) (2004). If the appellant fails to meet his or her burden on either prong of the *Strickland* test, the reviewing court does not need to assess the other prong. *Strickland,* 466 U.S. at 697 (IV); *Fuller v. State*, 277 Ga. 505, 507 (3) (591 SE2d 782) (2004).

9

As to the first prong of the *Strickland* test, "[t]o show that his lawyer's performance was deficient, Appellant must demonstrate that the lawyer performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms." *Davis v. State*, __ Ga. __ (2) (Case No. S16A0103, decided June 6, 2016); See *Strickland* 466 U.S. at 687-90. "A strong presumption exists that counsel's conduct falls within the broad range of professional conduct." (Citation omitted.) *Bryant v. State*, 298 Ga. 703, 707 (4) (784 SE2d 412) (2016). To overcome this presumption, Sneed must show that no "reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial." *Humphrey v. Nance*, 293 Ga. 189, 192 (II) (A) (744 SE2d 706) (2013). As a general rule, reasonable trial strategy and tactics do not amount to ineffective assistance of counsel. *Lee v. State*, 316 Ga. App. 227, 230 (1) (a) (728 SE2d 847) (2012). "[A]bsent a strong showing that counsel's actions were not reasonable, we will presume these strategies were not deficient." (Citation and punctuation omitted.) Id.

As to the prejudice prong of the *Strickland* test, Sneed must also show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Moreover, "[i]t is not enough to show that the error has some conceivable effect on the outcome of

10

the proceeding." (Citation and punctuation omitted.) *Harrington v. Richter*, 562 U.S. 86, 104 (IV) (131 SCt 770, 178 LE2d 624) (2011). An appellate court will not reverse a decision on the basis of ineffective assistance of counsel unless the trial counsel's conduct "so undermined the proper functioning of the adversarial process that the trial could not reliably have produced a just result." *Glass v. State*, 255 Ga. App. 390, 401 (10) (565 SE2d 500) (2002).

(a) Sneed's trial counsel testified at the hearing on the motion for new trial that she did not object to the testimony of the victim's brother, mother, grandmother, and Officer Barnes regarding what the victim said about the incident on the night it occurred, because she believed those statements were part of the victim's immediate outcry following the incident and were thus admissible as part of the res gestae. The written statements by the victim's brother and grandmother, which were read into evidence, also addressed only the events surrounding the incident that night. The brother's written statement related the sequence of events involving the text from his sister, the grandmother's arrival at the house, and his mother then waking up. With regard to his sister's statements, he reported only that "my sister had told me that my brother's dad had touched her and that my grandma was on her way." The grandmother's statement provided that the victim had called her crying to say that

11

Sneed had touched her. When the grandmother asked where the mother was, the victim said that she was asleep. The grandmother told the victim to wake the mother up. The victim kept crying and asked her grandmother to come get her. When the grandmother arrived, she asked the victim if Sneed had put his penis in her. The victim said, "no, he just put his hands inside my pants." Although trial counsel raised a general hearsay objection to the written statements given to police by the brother and grandmother, she did not object on the ground that the prior consistent statements improperly bolstered their testimony, and she could not recall a strategic reason for not objecting on this basis.

Pretermitting whether trial counsel's performance could be considered deficient in not objecting to evidence repeating the victim's statements about Sneed's actions that night, we find that he has failed to establish that he was prejudiced by this evidence. For the most part, the cited evidence was cumulative as each witnesses testified and the written statements indicated that the victim said that Sneed had touched her vaginal area. Sneed also admitted in his letter to the victim's mother that he had placed his fingers in the victim's vagina and he did not contest this fact at trial. Accordingly, Sneed has failed to establish that he was prejudiced by his trial counsel's failure to object to this evidence. *Williams v. State*, 292 Ga. 844, 848 (3) (a)

12

(742 SE2d 445) (2013) (no prejudice from counsel's failure to object to certain hearsay testimony that was primarily cumulative of other testimony); *Johnson v. State*, 328 Ga. App. 702, 712 (4) (b) (760 SE2d 682) (2014) (counsel not ineffective in failing to object to prior consistent statement bolstering other testimony where defendant failed to establish prejudice).

We separately address testimony by Officer Barnes that the victim told him she tried to stop Sneed and to move his hands out of her pants. Sneed's sole defense at trial was that the victim consented to, or even participated in, their interaction. Although Officer Barnes's testimony countered Sneed's defense, it did not constitute either a prior consistent statement by the victim or improper bolstering because the victim did not testify at trial that she had taken those actions. She only testified that she did not want Sneed to touch her. Moreover, the statement was not hearsay. At the time of Sneed's trial, the legal concept of res gestae as an exception to the hearsay rule was codified under former OCGA § 24-3-3 of Georgia's prior Evidence Code.[2] The statute provided that "[d]eclarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be

_____

[2] The trial in this case took place in September 2011, prior to the adoption of Georgia's new Evidence Code, which went into effect on January 1, 2013. See Ga. L. 2011, pp. 99, 214, § 101.

13

admissible in evidence as part of res gestae." Thus, Officer Barnes's testimony regarding what the victim told him she did during the incident was admissible as part of the res gestae. See *Tucker v. State*, 243 Ga. 683, 684 (3) (256 SE2d 365) (1979) (declarations were made so shortly after the commission of the crime as to constitute part of the res gestae); *Powell v. State*, 272 Ga. App. 628, 630 (612 SE2d 916) (2005) (testimony from the victim's outcry witness as her statements made immediately after the rape constituted admissible res gestae evidence). Accordingly, Sneed has failed to establish that his trial counsel was deficient in failing to object to this testimony. See *Wesley v. State*, 286 Ga. 355, 357 (3) (e) (689 SE2d 280) (2010) (trial counsel not ineffective for failing to make a meritless objection).

We find, therefore, that Sneed has failed to establish ineffective assistance of counsel with regard to the cited evidence repeating the victim's statements about the incident.

(b) Sneed's trial counsel did not recall a strategic reason for failing to object to the testimony from witnesses other than the victim concerning the prior difficulties between Sneed and the victim.

It is well settled that "[p]roof of prior difficulties between the defendant and victim – including prior acts of molestation – is admissible without notice or a

14

hearing . . . to show the defendant's motive, intent, and bent of mind in committing the act against the victim which resulted in the charges for which he was being prosecuted." (Citation omitted.) *Madison v. State*, 329 Ga. App. 856, 866 (3) (766 SE2d 206) (2014). Additionally, to the extent that the testimony shows that the victim felt her mother did not believe her description of the incidents with Sneed when she was younger, the evidence was relevant to explain her failure to cry out to her mother at the time of the incident in this case or to report it to her mother in the first instance.

Although Sneed's trial counsel did not object to the other witnesses' testifying about the victim's out-of-court statements regarding these prior difficulties, the record demonstrates that she chose instead to cross-examine the witnesses about this evidence. This Court has previously found that as part of a reasonable trial strategy, a trial counsel may choose not to object to such testimony but may opt instead to subject it to cross-examination. *Barmore v. State*, 323 Ga. App. 377, 383 (3) (746 SE2d 289) (2013); *Damerow v. State*, 310 Ga. App. 530, 537-38 (4) (a) (ii) (714 SE2d 82) (2011); *Al-Attawy v. State*, 289 Ga. App. 570, 573 (1) (657 SE2d 552) (2008).

Even though Sneed's trial counsel does not recall her specific strategy in failing to object, we find that Sneed has failed to establish that her approach to the

prior difficulties testimony fell below an objective standard of reasonable representation in addressing this evidence. *Thornton v. State*, 301 Ga. App. 784, 792 (4) (689 SE2d 361) (2009) ("To demonstrate deficient representation, a convicted criminal defendant must show that counsel's representation fell below an objective standard of reasonableness . . . [as] examined from counsel's perspective at the time of trial and under the circumstances of the case.) (citation omitted).

Because the failure to establish either prong of the *Strickland* test is lethal to a claim of ineffective assistance of counsel, *Fuller*, 277 Ga. at 506, we find that Sneed has failed to prove his claim of ineffective assistance of counsel on this ground.

(c) Although, as discussed in Division 2 above, Sneed appeals the admission of the Credibility Evidence, he makes no argument in his appellate brief concerning this evidence in the context of his claim for ineffective assistance of counsel.

Sneed begins his ineffective assistance argument by noting that "[r]egarding all of the above discussed testimony [his] trial counsel either did not object at all, or in the case of the admission of the written statements objected only on hearsay grounds," even though he asserts the evidence was inadmissible, but he confines his argument to evidence that he asserts improperly repeated the victim's testimony or that improperly repeated the testimony of other witnesses. Sneed contends that the

16

"case rested entirely on [the victim's] credibility and that "[t]hrough the erroneously admitted statements, [the victim's] credibility was repeatedly bolstered by other witnesses repeating her allegations." He further asserts that "[t]he credibility of those witnesses was then bolstered by the admission of their own prior statements, none of which were proper testimony for the jury." He makes no mention of the testimony from Finley and the mother addressing the victim's credibility or the mother's testimony attacking his own credibility. Under these circumstances, we find that Sneed has abandoned for appeal any claim of ineffective assistance of counsel based on his trial counsel's failure to object to the Credibility Evidence.

Therefore, we find no basis for reversal on the ground of ineffective assistance of counsel.

4. Sneed further argues that the trial court erred by not giving his requested jury charges on the issue of consent, which was his sole defense. "A trial court does not abuse its discretion in refusing to give a jury charge in the exact language requested when the charge given substantially covers the correct principles of law." *Gamble v. State*, 291 Ga. 581, 582 (2) (731 SE2d 758) (2012). See also *Stewart v. State*, 286 Ga. 669, 673 (6) (690 SE2d 811) (2010) ("refusal to give a jury charge in the exact language requested by a defendant is not error if the charge given by the trial court

17

substantially covers the applicable principles of law") (citation and punctuation omitted); *Watkins v. State*, 336 Ga. App. 145, 149 (3) (b) (784 SE2d 11) (2016) (same).

Here, we find no error on the part of the trial court in refusing to give the jury charges requested by Sneed. In its instructions to the jury, the trial court read the statutory definition of aggravated sexual battery, which says "[a] person commits the offense of aggravated sexual battery when he or she intentionally penetrates with a foreign object the sexual organ . . . of another person *without the consent of that person*." (Emphasis supplied.) OCGA §16-6-22.2 (b). The trial court also instructed the jury that the State was required to prove, beyond a reasonable doubt, each and every element of the charge in the indictment, which would include lack of consent. The court further instructed the jury twice that, should they find that the State failed to meet its burden, they were required to acquit Sneed. Because the trial court's jury charges, when considered as a whole and in conjunction with each other, substantially covered the principles of law requested by Sneed concerning the issue of consent, we find no basis for reversal on this ground. *Campbell v. State*, 292 Ga. 766, 769 (2) (740 SE2d 115) (2013) ("It is a fundamental rule that jury instructions must be read and considered as a whole in determining whether the charge contained error.") (citation

18

and punctuation omitted); *White v. State*, 291 Ga. App. 249, 251 (661 SE2d 865) (2008) ("A jury charge must be considered as a whole and the parts read in conjunction with each other.") (citation and punctuation omitted). Accordingly, we find no error.

*Judgment affirmed. Miller, P. J., and McFadden, J., concur.*