**THIRD DIVISION**
**GOBEIL, J.,**
**COOMER and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 6, 2019**

# In the Court of Appeals of Georgia

A18A2084. WALKER v THE STATE.

HODGES, Judge.

Andre Pearre Walker was convicted of three counts of aggravated sodomy (OCGA § 16-6-2 (a) (2)), two counts of aggravated sexual battery (OCGA § 16-6-22.2 (b)), two counts of aggravated assault (OCGA § 16-5-21 (b)) (July 1, 2015), three counts of false imprisonment (OCGA § 16-5-41 (a)), two counts of impersonating an officer (OCGA § 16-10-23), one count of possession of a firearm during the commission of a crime (OCGA § 16-11-106 (b)), and one count of kidnapping (OCGA § 16-5-40 (a)).[1] Walker was sentenced to life in prison with the possibility of parole plus 75 years. Walker appeals his convictions, contending that

---

[1] Walker was found not guilty on two counts of possession of a firearm during the commission of a crime.

(1) the trial court improperly advised him prior to trial about the minimum sentence he was facing; (2) the jury was not properly charged on his theory of defense and was not charged as to alternate crimes; (3) the trial court erred in refusing to excuse certain biased members of the venire; and (4) he received ineffective assistance of counsel. For the reasons stated below, we find no error and affirm.

"On appeal from a criminal conviction, a defendant no longer enjoys the presumption of innocence, and the evidence is viewed in the light most favorable to the guilty verdict." (Citation and punctuation omitted.) *Scarborough v. State*, 317 Ga. App. 523, 523 (731 SE2d 396) (2012).

So viewed, the evidence here shows that on December 4, 2012, C. F. was released from the Clayton County jail. As C. F. was walking home, Walker drove up to him, asked if him he needed a ride, and asked C. F. if he could sell him some marijuana. C. F. got in Walker's car, and after Walker drove away he either told C. F. that he was an undercover police officer or led C. F. to that impression, and ordered C. F. to exit the vehicle. Walker told C. F. to put his hands on the car and told him he was going to search his private areas to see if C. F. was in possession of anything that could hurt him. Walker then showed C. F. a gun and told him that if he ran away he would be shot. Walker forced C. F. to lie down in the back seat of his

car, applied a Vaseline-like substance in C. F.'s anus, and then penetrated C. F.'s anus with his penis. Afterward, C. F. reported the crime to his mother and went to the hospital. C. F. testified that he is heterosexual, never engaged in anal intercourse before, and was not working as a prostitute. His mother also testified that her son was heterosexual and that she never knew of him working as a prostitute. Walker stipulated that his semen was collected from C. F.'s anus.

On January 30, 2013, B. T. was walking home from the library after taking his G. E. D. test. Walker pulled up next to B. T. and asked him if he knew where to buy marijuana. B. T. got in the car with Walker, but instead of going where B. T. directed, Walker drove to an apartment complex where B. T. happened to live at the time. Walker then told B. T. that he was a police officer, asked B. T. if he had anything that would stick him, and patted him down. After that, Walker forced B. T. down in the car and, when B. T. resisted and made noise, Walker asked B. T. if he had ever been shot before and threatened to shoot B. T. in the back of the head. B. T. felt something hard against the back of his head as Walker said this. Walker stuck his finger in B. T.'s anus and then penetrated B. T.'s anus with his penis. After Walker was finished, B. T. asked him for a cigarette in an attempt to stall Walker so he could get information to give the police. B. T. reported the crime to his aunt and called the

3

police. B. T. testified that he had never previously engaged in anal intercourse and was not a prostitute. Walker stipulated that his semen was collected from the anus of B. T.

On May 14, 2013, Q. F. was walking from the home of his child's mother to his home when Walker drove up next to him and asked him if he knew where to buy marijuana. Q. F. got in the back seat of Walker's car and, instead of taking Q. F. to the location identified, Walker drove to the same complex where he took B. T. Walker told Q. F. that he was a police officer and started searching him. During the process of searching Q. F., Walker inserted his finger in Q. F's anus. Walker then put a gun to the back of Q. F.'s head and told Q. F. that he was going to let Walker do what he is going to do. Walker inserted his finger in Q. F.'s anus again and then penetrated his anus with his penis. Q. F. reported the crime to his mother and the police. Q. F. testified that he is not homosexual and had never before engaged in anal intercourse. Q. F.'s mother also testified that her son never sold his body for sex. Walker stipulated that his semen was collected from the anus of Q. F.

Walker testified in his own defense at trial. Walker alleged that all three men were prostitutes who consensually had sex with him in the car he was driving based

upon the promise of payment that he never made and never intended on making. Walker admitted to patting all three down to look for weapons before having sex.

The jury convicted Walker of three counts of aggravated sodomy, two counts of aggravated sexual battery, two counts of aggravated assault, three counts of false imprisonment, two counts of impersonating an officer, one count of possession of a firearm during the commission of a crime, and one count of kidnaping. Walker was sentenced to a total of life in prison with the possibility of parole plus 75 years. Walker now appeals.

1. Walker contends that the trial court erred in misinforming him prior to the start of the trial about the minimum sentence he faced. We find no reversible error.

"[A] defendant has no constitutional right to enter a guilty plea." *Sanders v. State*, 280 Ga. 780, 782 (2) (631 SE2d 344) (2006). Georgia law, likewise, provides no statutory right to enter a guilty plea. Id. at 783-784 (2). Even so, here the State offered Walker the chance to plead guilty to one count of aggravated sodomy and one count of aggravated assault and be sentenced to 30 years with 25 to serve. In discussing this offer with Walker, the trial court noted that he could be facing a lengthy sentence if convicted, and incorrectly stated that some charges, such as aggravated sodomy, have a mandatory minimum sentence of ten years, even though

5

the actual mandatory minimum for that charge is 25 years. OCGA § 16-6-2 (b) (2). Against counsel's advice, Walker rejected the plea deal and went to trial.

Walker had no constitutional or statutory right to the guilty plea he rejected. He does not allege his counsel was ineffective in advising him during the plea deal process. Indeed, not only did his counsel suggest he take the plea deal, Walker's counsel also told him after the pre-trial hearing that he was likely to be convicted and was facing multiple life sentences. The trial court's misstatement about the mandatory minimum for a single charge, among the other charges faced by Walker, did not deprive him of any legal right, and thus it does not form the basis for reversal.

2. Walker argues that the trial court erred by failing to charge the jury both on his theory of defense and other possible crimes. We disagree.

### a. Walker's Sole Defense

"It is true, as alleged by [Walker], that a trial court is required to charge the jury on the defendant's sole defense, even without a written request, if some evidence has been presented to support the charge." *Wilson v. State*, 255 Ga. App. 497, 499 (2) (565 SE2d 847) (2002). Here, Walker's sole defense to the charge of aggravated sodomy was that the victims were prostitutes who consented to their sexual encounter with him. Walker requested the following charge, which the trial court did not give:

Consent is an affirmative defense to a charge of Aggravated Sodomy, in that acts of sexual intimacy between persons legally able to consent is protected by the individuals' constitutional right to privacy. Therefore, if it is determined that the sexual intimacy was consensual, one cannot be convicted of Aggravated Sodomy under O.C.G.A. § 16-6-2. . Consent, however, is an element of the crime of aggravated sodomy, which provides that "[a] person commits the offense of aggravated sodomy when he or she commits sodomy with force *and against the will* of the other person[.]" (Emphasis supplied.) OCGA § 16-6-2 (a) (2). The trial court charged the jury that

[a] person commits the offense of aggravated sodomy when that person performs a sexual act involving the sex organ of one and the anus of another with force and against the will of the victim. The requirement that the State prove beyond reasonable doubt that the act of sodomy occurred against the will of the victim means that the act occurred without the consent of the victim. The State must also prove the element of force beyond a reasonable doubt.

"A trial court does not abuse its discretion in refusing to give a jury charge in the exact language requested when the charge given substantially covers the correct principles of law." (Citation omitted.) *Sneed v. State*, 337 Ga. App. 782, 790 (4) (788 SE2d 892) (2016). Here, by charging the jury as to the elements of aggravated sodomy, including the requirement that the jury find a lack of consent, the trial court

7

substantially covered Walker's sole defense. See id. at 791 (4) (finding charge on elements of aggravated sexual battery, which included the element of consent, substantially covered the defendant's sole defense of consent). Accordingly, we find no error.

### b. Failing to Charge Other Crimes

"Trial courts should tailor their charges to match the allegations of indictments . . . ." (Citation omitted.) *Daniels v. State*, 310 Ga. App. 562, 565 (2) (714 SE2d 91) (2011). "Criminal indictments are not deemed amendable to conform to the evidence[;]" consequently, a trial court does not "have the power to interpret the evidence so as to support a jury charge on a separate, unindicted, alternative offense." (Citation and punctuation omitted.) *Carroll v. State*, 224 Ga. App. 543, 549 (3) (481 SE2d 562) (1997). Walker argues that his testimony would have supported charges such as pandering, pandering by force, theft of services, and theft by deception, but he was not charged by the State with any of these crimes. Accordingly, the trial court committed no error in failing to give unrequested charges on unindicted alternate offenses.

3. Walker contends that the trial court erred in refusing to excuse for cause certain biased members of the venire. We find no error.

"If counsel raise issues on appeal relating to voir dire, they also must transcribe the voir dire in order for there to be an appellate review, as an appellant carries the burden of showing error by the record." (Citation omitted.) *Weeks v. State*, 270 Ga. App. 889, 896 (4) (608 SE2d 259) (2004). Here, voire dire was not transcribed, thus the only evidence of what transpired is trial counsel's testimony from the motion for new trial hearing. Trial counsel testified that some members of the venire "responded in the affirmative that they did not like gay people." The record contains no further detail about what exactly these prospective jurors said, but trial counsel testified that none of them stated they would be unable to judge the case based on its merits and the law.

> For a juror to be excused for cause, it must be shown that he or she holds an opinion of the guilt or innocence of the defendant that is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence . . .

(Citation omitted.) *Thomas v. State*, 257 Ga. App. 350, 351 (2) (571 SE2d 178) (2002). "Since voir dire was not transcribed, we must assume that the jurors who were not excused for cause did not have such fixed opinions that they could not be

9

impartial judges of [Walker's] guilt." *Walden v. State*, 289 Ga. 845, 849 (2) (717 SE2d 159) (2011). For these reasons, we find no error.

4. Walker contends he received ineffective assistance of trial counsel. We disagree.

To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LEd2d 674) (1984).

> If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts. Furthermore, there is a strong presumption that the performance of counsel was within the wide range of reasonable professional lawyering, and we cannot reach a contrary conclusion unless defendant successfully rebuts the presumption by clear and convincing evidence. Judicial scrutiny of counsel's performance must be highly deferential. The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only

whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted.

(Citations and punctuation omitted.) *Bridges v. State*, 286 Ga. 535, 537 (1) (690 SE2d 136) (2010).

> In determining what constitutes ineffective assistance, a critical distinction is made between inadequate preparation and unwise choices of trial tactics and strategy. Particularly in regard to matters of trial strategy and tactic, effectiveness is not judged by hindsight or result.

(Citation omitted.) *Davis v. State*, 290 Ga. 584, 587 (2) (b) (723 SE2d 431) (2012). Indeed, "decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course." (Citation and punctuation omitted.) *Hicks v. State*, 295 Ga. 268, 276 (3) (b) (759 SE2d 509) (2014).

*(a) Untimely Filing of Request to Charge*

Trial counsel did not timely file his requests to charge, and Walker contends this failure constitutes ineffective assistance of counsel. The charges submitted by counsel concerned the following: the State's burden of proof; prior inconsistent statements of witnesses; reasonable doubt; consent as an affirmative defense to aggravated sodomy; the State's burden to prove each offense charged; the jury's

11

inability to rely on sympathy and prejudice in reaching a judgment; the requirement that circumstantial evidence exclude every reasonable hypothesis but guilt; and the role of the jury to determine the credibility of witnesses. The trial court refused to consider any but the consent charge due to untimeliness. The charges given by the trial court, however, encompass nearly all of principles contained in trial counsel's untimely submission. Walker has failed to show that the charges given were deficient, thus he has failed to show prejudice. See *Bragg v. State*, 295 Ga. 676, 680 (4) (f) (763 SE2d 476) (2014) (defendant failed to show prejudice when the jury was charged on specified principle of law despite trial counsel's failure to submit a written request for the charge); see also *Tenant v. State*, 218 Ga. App. 620, 623 (4) (e) (462 SE2d 783) (1995) (failing to request jury charges does not amount to ineffective assistance if the charges given were not deficient).

### (b) Failure to Request Additional Charges

Walker contends that his testimony could have supported charges for pandering, felony pandering by force, theft of services, and theft by deception. As discussed in greater detail in Division 2, supra, the trial court would not have been authorized to charge the jury on alternate unindicted charges. Accordingly, trial counsel was not deficient for failing to request improper charges. See *Stinchcomb v.*

12

*State*, 280 Ga. 170, 174 (5) (626 SE2d 88) (2006); *Madge v. State*, 245 Ga. App. 848, 851 (3) (b) (538 SE2d 907) (2000).

Walker also alleges error in failing to request charges on "lesser included offenses;" however, he does not identify which lesser included offenses should have been charged. Consequently, Walker has not established that he was prejudiced by counsel's failure, as he has not demonstrated that he likely would have been convicted of any specific lesser crime if the jury had been so charged. See *Covington v. State*, 251 Ga. App. 849, 852-853 (2) (b) (555 SE2d 204) (2001).

### (c) Failure to Object to Hearsay Testimony

Walker contends that trial counsel was ineffective for failing to object to hearsay testimony from the mothers of the victims and responding police officer about what the victims conveyed to them. The victims, however, testified directly about their respective experiences, and the testimony of the mothers and officers was cumulative of the victims' testimony. "Pretermitting whether trial counsel performed deficiently in [failing to object to the hearsay, Walker] has not shown prejudice because he has not shown a reasonable probability that the result of the proceeding would have been different had trial counsel sought to exclude this cumulative evidence." (Citations omitted.) *Garza v. State*, 347 Ga. App. 335, 341 (2) (b) (819

13

SE2d 497) (2018); see also *Robinson v. State*, 303 Ga. 321, 327 (3) (b) (812 SE2d 232) (2018) ("It is not ineffective assistance . . . to fail to object to hearsay when it is cumulative of other, admissible evidence.") (citations omitted).

### *(d) Failure to Strike Jurors*

Walker alleges trial counsel was ineffective for failing to move to strike for cause or using peremptory strikes to remove all venire members who expressed bias against homosexuals. Trial counsel testified that he used peremptory strikes to remove some jurors who expressed bias against homosexuals, but strategically permitted one, a man, to be empaneled on the jury. Trial counsel believed that this juror would be more favorable to the defense than an alternative prospective female juror who he struck because he thought the man would be more receptive to believing that the victims were prostitutes, and thus would be more likely to believe Walker's defense. He also believed that the prospective jurors he used peremptory strikes to remove were more important to strike than the above-referenced male juror.

"The decision on which jurors to accept and which jurors to strike is one of trial strategy, and trial counsel's strategic decisions made after thorough investigation are virtually unchallengeable." (Citation omitted.) *Port v. State*, 295 Ga. App. 109, 113 (2) (c) (671 SE2d 200) (2008). A strategic decision can form the basis of an

14

ineffective assistance of counsel claim only if it is "so patently unreasonable that no competent attorney would have followed such a course." *Hicks*, supra, 295 Ga. at 276 (3) (b). We do not find trial counsel's strategy patently unreasonable, and thus we do not find his performance in this regard deficient.

### (e) Failure to Object to Question to Walker

Walker contends his trial counsel was ineffective for failing to object to an "inflammatory" question directed to him on cross-examination. As the State was questioning Walker about his admitted prior prostitution, the prosecutor asked him "Did someone take your manhood?" and "Was that the reason you tried to take it from [the victims]?". Walker alleges these questions highlighted his homosexuality and stoked the bias of the juror on the panel who indicated a bias against homosexuals during voir dire.

Pretermitting whether it was error not to object to these questions, Walker has not demonstrated a likelihood that the outcome of the trial would have been different had an objection been made in light of the overwhelming evidence of guilt provided by three different victims all testifying to strikingly similar encounters with Walker wherein he asked them to buy drugs, claimed to be a police officer, patted them down, inserted his finger in their anuses, and then sodomized them in the backseat of a car.

15

See *Moore v. State*, 278 Ga. 397, 399-400 (2) (a) (603 SE2d 228) (2004); *Landers v. State*, 270 Ga. 189, 191 (4) (508 SE2d 637) (1998); *Baldivia v. State*, 267 Ga. App. 266, 274 (5) (e) (599 SE2d 188) (2004).

### *(f) Failure to Cross-Examine Witness About Fabrication*

Walker alleges his trial counsel was ineffective for failing to explore whether the witnesses were fabricating their allegations against him, in light of the geographic proximity of where the victims lived. Walker, however, has presented no evidence which supports that the victims worked in concert to fabricate claims against him. Indeed, two of the three victims testified that they did not know the other victims and the third victim was never asked. Speculation that an investigation into the relationship between the victims would have changed the outcome of the case will not establish the prejudice required to sustain a claim for ineffective assistance of counsel. See *Dickens v. State*, 280 Ga. 320, 323 (2) (627 SE2d 587) (2006); *Hernandez v. State*, 303 Ga. App. 103, 106 (2) (692 SE2d 712) (2010).

### *(g) Inadequate Preparation*

Walker contends that his trial counsel's inadequate preparation caused counsel to fail to notice the geographic proximity of the victims' residences and to fail to pursue the strategy of requesting alternate charges for pandering, felony pandering

16

by force, theft of services, and theft by deception. For the reasons discussed above, there is no evidence of fabrication, so there is no evidence that further investigation in to the victims would have altered the outcome of the case. See *Slan v. State*, 316 Ga. App. 843, 847 (2) (b) (730 SE2d 565) (2012) (defendant failed to show prejudice because he did not show that further investigation would have yielded beneficial evidence). Further, given that the trial court would not have been authorized to charge the jury on alternate unindicted crimes, as discussed above, trial counsel's preparation was not inadequate simply because it did not result in pursuit of an impermissible strategy. See *Stinchomb*, supra, 280 Ga. at 174 (5).

In summary, Walker has failed to demonstrate that the trial court committed any reversible error or that he received ineffective assistance of counsel.

*Judgment affirmed. Gobeil and Coomer, JJ., concur.*